Case 4:21-cv-01813 Document 71 Filed on 08/11/22 in TXSD Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
August 11, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DEEPA KRISHNA, § | |
| *Plaintiff,* § | |
| § | |
| V. § | CIVIL ACTION NO. 4:21-cv-1813 |
| § | |
| LIFE INSURANCE COMPANY OF § | |
| NORTH AMERICA, ET AL., § | |
| *Defendants.* § | |

# MEMORANDUM AND RECOMMENDATION

Before the Court are Plaintiff's Motion for Partial Summary Judgment (ECF 43) and Defendant Life Insurance of North America's Cross-Motion for Summary Judgment (ECF 46), in which the Honeywell Defendants join (ECF 45).[1] Plaintiff's motion seeks summary judgment on her claim for accidental death benefits pursuant to a plan that all parties agree is governed by the Employees Retirement Security Act of 1974 (ERISA) (ECF 43 at 1; ECF 46 at 2). Defendants' motions seek summary judgment on the same claim. Having considered the parties' submissions, argument of counsel at a hearing on July 13, 2022, and the law, the Court RECOMMENDS that Plaintiff's Motion be DENIED and Defendants' Motions be GRANTED.

## I. BRIEF FACTS AND PROCEDURAL BACKGROUND

Plaintiff Deepa Krishna is the widow of Karthik Balakrishnan and the mother of his young daughter. Balakrishnan began working at Honeywell International, Inc. in August 2019 and

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 48. The Honeywell Defendants include Honeywell International, Inc., Honeywell International, Inc. Accidental Death and Dismemberment Plan, and Steven Jacobs, Honeywell Vice President Compensation and Benefits, sued by Krishna in his official capacity of Plan Administrator. ECF 33 at 2; ECF 43 at 1n.1. Jacobs has never been served in this case and is not a Defendant in his individual capacity.

became a participant in the Honeywell International, Inc. benefit plan (Plan) governed by the Employees Retirement Security Act of 1974 (ERISA). The Plan provided Balakrishnan with accidental death benefits totaling $1,881,000 under an Accidental Death & Dismemberment Policy (Policy) underwritten by Life Insurance Company of North America (LINA). Honeywell International, Inc., acted as the Plan Administrator and LINA acted as the Claims Administrator.

Balakrishnan died on October 25, 2020 when the privately-owned, single-engine airplane in which he was a passenger crashed. ECF 43-1 at 54, 85. Plaintiff Krishna filed a claim for benefits under the Plan. *Id.* at 84. Her claim for life insurance benefits was approved on December 1, 2020. *Id.* at 51. On December 31, 2020, LINA denied her claim for accidental death benefits, stating that "[a] loss caused by or resulting from flight in an aircraft is specifically excluded from coverage . . . . except in the case where an insured is traveling as a fare-paying passenger on a regularly scheduled commercial airline." *Id.* at 43. Krishna appealed the denial of benefits. *Id.* at 9. LINA denied Krishna's appeal for the same reason, again stating the Policy excluded coverage for her husband's accidental death because "[i]t was determined that Mr. Balakrishnan's death resulted from injuries sustained in a fatal plane crash which was not on a regularly scheduled commercial airline[.]" *Id.* at 6.

On June 4, 2021, Krishna sued LINA, the Plan, and Honeywell International, Inc. as Plan Administrator. ECF 1. Krishna's Second Amended Complaint seeks accidental death benefits under ERISA § 502(a)(1)(B) and alternatively, seeks equitable relief under ERISA § 502(a)(3). ECF 33. Krishna moves for summary judgment on her § 502(a)(1)(B) claim only. *See* ECF 43. Defendants oppose Krishna's motion and move for summary judgment in their favor on the § 502(a)(1)(B) claim. On July 18, 2022, Plaintiff filed a Motion for Partial Voluntary Dismissal, for Expedited Consideration, and Memorandum in Support, which seeks voluntary dismissal of

her § 502(a)(3) claim. ECF 62. That Motion is the subject of a separate Memorandum and Recommendation.

## II. SUMMARY JUDGMENT PROCEDURE

ERISA cases are governed by standard summary judgment rules. *Talamantes v. Metro. Life Ins. Co.*, 3 F.4th 166, 169 (5th Cir. 2021); *Lebron v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 849 F. App'x 484, 486 (5th Cir. 2021). Summary judgment is appropriate when the "movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013).

## III. THE APPLICABLE STANDARD OF REVIEW

The parties dispute whether this Court should review LINA's benefits decision using a *de novo* or abuse of discretion standard. Generally, if an ERISA plan lawfully delegates discretionary authority to a plan administrator, the Court's review is limited to determining whether the plan administrator abused that discretion. *Bunner v. Dearborn Nat'l Life Ins. Co.*, No. CV H-18-1820, 2020 WL 3493760, at *7 (S.D. Tex. May 26, 2020) (citing *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989))), report and recommendation adopted, No. CV H-18-1820, 2020 WL 3490611 (S.D. Tex. June 26, 2020). If an ERISA plan does not contain a valid delegation clause, the Court reviews both legal and factual determinations using a *de novo* standard of review. *Id.* The Fifth Circuit does not require specific language, or "magic words," for the delegation of discretionary authority, but the delegation must be "unmistakable" and not merely implied.

*Thomas v. Trustmark Corp.*, No. 4:20-CV-00173, 2021 WL 1206419, at *1-2 (S.D. Tex. Jan. 19, 2021) (describing plan language the Fifth Circuit has found sufficient to grant discretionary authority), report and recommendation adopted, No. 4:20-CV-00173, 2021 WL 8016725 (S.D. Tex. Feb. 8, 2021).

### A. The Plan delegates to LINA discretionary authority to decide Claims.

The Plan documents validly delegate discretion to LINA to make claims decisions. First, the parties agree that the 2019 Honeywell International Inc. Benefit Plan and Summary Plan Description (2019 SPD) is a Plan document the Court must consider when determining the applicable standard of review. ECF 66 at 1-4; ECF 67 at 1-2; ECF 69 at 4; ECF 46-2 at 5. The 2019 SPD says:

> In general, *the Plan Administrator is the sole judge of the application and interpretation of the Plan and has the discretionary authority to construe the provisions of the Plan,* to resolve disputed issues of fact, and to make determinations regarding eligibility for benefits. The *Plan Administrator has the authority, in the Plan Administrator's sole discretion, to interpret the Plan*, and resolve ambiguities therein, to develop rules and regulations to carry out the provisions of the Plan, and to make factual determinations. However, *the Plan Administrator has the authority to delegate certain of its powers and duties to a third party.* The Plan Administrator has delegated certain administrative and claim-review functions under the Plan to the benefit providers. *As the Plan Administrator's delegate, the benefit providers have the authority to make all decisions under the Plan relating to benefit claims*, including, where applicable, determinations as to the medical necessity of any service or supply.
>
> *The decisions of the Plan Administrator (or his/her delegate) in all matters relating to the Plan (including but not limited to, eligibility for benefits, Plan interpretations, and disputed issues of facts)* will be final and binding on all parties and generally will not be overturned by a court of law.

ECF 46-2 at 39 (emphasis added). Consistent with the 2019 SPD, the Plan Administrator delegated authority to the benefit provider, LINA, under the applicable AD&D Policy:

> The Plan Administrator has appointed the Insurance Company [LINA] as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims.

4

ECF 43-1 at 296.  Further, the LINA Group Accident Insurance Certificate provides:

> The Plan Administrator has appointed the Insurance Company [LINA] as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims.  *The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan*, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact.  All decisions made by the Insurance Company shall be final and binding on Participants and Beneficiaries to the full extent permitted by law.

ECF 46-3 at 34 (emphasis added).  The 2003 SPD, which is a part of the administrative record and on which Plaintiff relies for her argument that the flight exclusion must be interpreted in her favor, is silent regarding discretion to decide claims.  *See* ECF 43-1 at 14-39.

Plaintiff argues a *de novo* standard of review applies here because the provisions in the 2019 SPD and Insurance Certificate which purport to delegate discretionary authority conflict with the Policy, and therefore the delegation provisions are invalid.  Plaintiff bases her argument on language in the Policy and the Insurance Certificate stating:  (1) that the Policy "is the sole contract under which benefits are payable by the Insurance Company;" and "no change in this Policy will be valid until approved . . .;" and (2) that the Certificate "is not the insurance contract and does not waive or alter any terms of the Policy;" and "[i]f questions arise, the Policy language will govern."  ECF 67 at 2-3 (citing LINA-KRISHNA 292, 283; HON-KRISHNA 72).  Contrary to Plaintiff's position, the language in the 2019 SPD and the Insurance Certificate does not conflict with the statement in the Policy appointing LINA as "the named fiduciary for deciding claims for benefits under the Plan." ECF 43-1 at 296.  The Policy language stating that it is the only contract under which benefits are *payable*, neither directly conflicts with nor invalidates the delegation of discretion contained in the 2019 SPD and Insurance Certificate. The Policy is the only contract under which benefits are *payable*, but that fact does not preclude the grant of discretion in the SPD and Insurance Certificate to LINA to interpret the terms of the contract under which benefits are

5

payable. While the language in the Policy itself may not be sufficient to confer on LINA full discretionary authority to interpret the Policy (as opposed to authority to decide claims), the language in the 2019 SPD and Insurance Certificate clearly is.

Plaintiff cites *Estate of Thompson v. Sun Life Assur. Co. of Canada*, 354 F. App'x 183, 187 (5th Cir. 2009) for the proposition that a delegation of discretion must be contained in the Policy itself. ECF 67 at 3-4. But that case holds only that the policy contained a clear delegation of discretion and did not conflict with the SPD. *Estate of Thompson* says nothing about whether a clear delegation of discretion in an SPD or other plan documents is effective where the Policy language does not clearly grant full discretionary authority but also does not conflict with the grant of authority in other plan documents. Plaintiff's reliance on *Jobe v. Med. Life Ins. Co.*, 598 F.3d 478, 483-4 (8th Cir. 2010), is similarly misplaced. In *Jobe*, the Eighth Circuit held that an SPD which contained a grant of discretionary authority but expressly provided that the terms of the policy would prevail, was ineffective to confer discretionary authority where the policy conflicted with the SPD because it was silent on the issue of discretion. *Id.* Here, the grant of authority in the Policy is consistent with, but less clear than, the grant of discretionary authority in the more explicit SPD. This case is more in line with the Fifth Circuit's decision in *Manuel v. Turner Indus. Grp., L.L.C.*, which applied an abuse of discretion standard where the SPD contained a clear grant of discretion but the policy language regarding discretion was ambiguous. 905 F.3d 859, 868 (5th Cir. 2018).

The Court finds that the Plan conferred discretion on LINA to decide benefit claims. The language used in the Policy, and the other Plan documents is consistent with language the Fifth Circuit has found sufficient to confer discretion. *See Batchelor v. Int'l Bhd. of Elec. Workers Loc. 861 Pension & Ret. Fund*, 877 F.2d 441, 443 (5th Cir. 1989) (finding discretion granted by

language stating trustees "have full and exclusive authority to determine all questions of coverage and eligibility"); *Dowden v. Blue Cross & Blue Shield of Texas, Inc.*, 126 F.3d 641, 644 (5th Cir. 1997) (finding discretion granted where the carrier had full authority and discretion to make decisions regarding eligibility and benefits under the insurance policy).

  **B.**  **Applicable state law does not preclude the grant of discretionary authority.**

  Because the Court finds the Plan documents confer discretion on the Plan Administrator or its delegate to interpret the policy when deciding claims, the Court also must determine whether the governing state law prohibits such discretionary clauses. *See Rittinger v. Healthy All. Life Ins. Co.*, 914 F.3d 952, 955 (5th Cir. 2019) (holding the Texas Insurance Code's prohibition of delegation clauses discussed in *Ariana M. v. Humana Health Plan of Texas, Inc.* does not apply where the law of another state governs the plan). The Policy provides that "[t]he Laws of the State of Issue shown above [Delaware] govern this Policy," ECF 43-1 at 95. The 2019 SPD contains a provision stating "[t]he Plan will be governed by the laws of the State of New Jersey." ECF 46-2 at 33. New Jersey law prohibits discretionary clauses in some insurance policies, but Delaware law does not. Therefore, Plaintiff argues New Jersey law governs the validity of the Plan's delegation of discretionary authority, while LINA argues Delaware law governs the issue. ECF 47 at 4-6; ECF 46 at 6.

  As LINA points out, New Jersey law prohibits discretionary clauses in insurance policies, but does not speak to the delegation of discretion under an ERISA Plan. *See* ECF 51 at 2-3. Furthermore, New Jersey law does not prohibit discretionary clauses in policies that are part of ERISA plans if, as is the case here, the decision is subject to judicial review. *See Evans v. Emp. Benefit Plan, Camp Dresser & McKee, Inc.,* 311 F. App'x 556, 560 (3d Cir. 2009) (holding that New Jersey Administrative Code § 11.4-58.1 "only prohibits those provisions that claim to reserve

7

*sole discretion* to the carrier." (emphasis added)); *see also Goble v. Liberty Life Assur. Co. of Bos.*, No. CIV.A. 12-6030 PGS, 2013 WL 5603871, at *4 (D.N.J. Oct. 11, 2013) (applying abuse of discretion standard despite § 11.4-58.1 because the Plan gave notice of claimants right to seek judicial review); *Baker v. The Hartford Life Ins. Co.*, No. 08-CV-6382FLW, 2010 WL 2179150, at *11 (D.N.J. May 28, 2010) (holding that "because ERISA explicitly grants claimants the right to judicial review," New Jersey law does not prohibit abuse of discretion review), aff'd sub nom. *Baker v. Hartford Life Ins. Co.*, 440 F. App'x 66, 68 n.1 (3d Cir. 2011). Thus, because neither Delaware law nor New Jersey law prohibit the Plan's delegation of discretionary authority in this case, the Court will apply the abuse of discretion standard when reviewing the decision to deny AD&D benefits.

**C.    Legal standards governing abuse of discretion review.**

When conducting an abuse of discretion review a court first asks whether the decision was legally correct. *Connecticut Gen. Life Ins. Co. v. Humble Surgical Hosp.*, L.L.C., 878 F.3d 478, 483 (5th Cir. 2017). In determining whether a decision is legally correct, a court considers "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Porter v. Lowe's Companies, Inc.'s Bus. Travel Acc. Ins. Plan*, 731 F.3d 360, 364 n.8 (5th Cir. 2013) (citations omitted). The second consideration listed above is the most important. *Id*. If the court finds the decision was legally correct, the inquiry ends and there is no abuse of discretion. *Connecticut Gen. Life Ins. Co.*, 878 F.3d at 483.

In the event the answer to the first question is "no," the court will proceed to a determination of whether the decision constitutes an abuse of discretion. *Id*. Determining whether a decision constitutes an abuse of discretion is "the functional equivalent" of determining whether

8

it was arbitrary and capricious. *Id*.; *Foster v. Principal Life Ins. Co.*, 920 F.3d 298, 304 (5th Cir. 2019) (citations omitted). A decision is arbitrary only "if made without a rational connection between known facts and the decision or between found facts and the evidence." *Connecticut Gen. Life Ins. Co.*, 878 F.3d at 483. Under the abuse of discretion standard, this Court must uphold the plan administrator's decision if it "fall[s] somewhere on a continuum of reasonableness – even if on the low end." *Id.*; *Gonzales v. ConocoPhillips Co.*, 806 F. App'x 289, 291 (5th Cir.2020) (citation omitted).

As the Fifth Circuit has recognized, "[a] different standard of review will sometimes lead to a different outcome, but there will also be many cases in which the result would be the same with deference or without it." *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 257 (5th Cir. 2018). Because the Court answers "yes" to whether LINA's interpretation of the Policy exclusion was legally correct, the inquiry ends and there is no further review for abuse of discretion. Therefore, the Court believes this case represents one in which the outcome would be the same whether an abuse of discretion or *de novo* review standard of review is applied. *Id*.

**IV. ANALYSIS**

**A. The Court applies federal common law when deciding whether LINA's interpretation of the AD&D Policy was legally correct.**

Federal common law applies to the interpretation of ERISA plan provisions. *Talamantes v. Metro. Life Ins. Co*., 3 F.4th 166, 169 (5th Cir. 2021); *Ramirez v. United of Omaha Life Ins. Co.*, 872 F.3d 721, 725 (5th Cir. 2017). Federal common law rules of contract construction and interpretation incorporate ordinary rules of contract construction. *Weber v. Life Ins. Co. of N.A.*, 836 F. Supp. 2d 427, 432 (W.D. Va. 2011). In determining whether LINA's interpretation of the flight exclusion is a fair reading of the Plan, the Court must read the exclusion in accordance with its plain, generally accepted meaning. *See Holman v. Life Ins. Co. of N. Am.*, 533 F. Supp. 3d

9

502, 509 (S.D. Tex. 2021) (citing *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997) and *Jones v. Ga. Pac. Corp.*, 90 F.3d 114, 116 (5th Cir. 1996)).

> **B.   LINA's interpretation of the Policy exclusion is legally correct and therefore its decision denying AD&D benefits was not an abuse of discretion.**

As the first step in the abuse of discretion review, the Court must decide whether LINA's interpretation of the Policy's flight exclusion is legally correct. The parties' briefing addresses only in passing whether LINA has consistently interpreted the flight exclusion and whether Plaintiff's interpretation would create unanticipated costs. Like the parties, the Court focuses on the most important factor in determining whether LINA's decision is legally correct, i.e., whether LINA's interpretation of the flight exclusion is consistent with a fair reading of the Plan.

LINA denied AD&D benefits to Plaintiff based on its reading of the following Policy language:

**COMMON EXCLUSIONS**

In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, … is caused by or results from any of the following unless coverage is specifically provided for by name in the *Description of Benefits* Section:

\*   \*   \*

6.   flight in, boarding or alighting from an Aircraft or any craft designed to fly above the Earth's surface:
   a.   except as a passenger on a regularly scheduled commercial airline;
   b.   being used for:
      i.   crop dusting, spraying or seeding, giving and receiving flying instruction, fire fighting, sky writing, sky diving or hang-gliding, pipeline or power line inspection, aerial photography or exploration, racing, endurance tests, stunt or acrobatic flying; or
      ii.  any operation that requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on);
   c.   designed for flight above or beyond the earth's atmosphere;

        d.        an ultra-light or glider;
        e.        being used for the purpose of parachuting or sky diving;
        f.        being used by any military authority, except an Aircraft used by the Air Mobility Command or its foreign equivalent;

ECF 43-1 at 281; ECF 46-3 at 20 (referred to herein as the "flight exclusion" or "Exclusion 6"). LINA interprets 6(a) to mean that benefits will not be paid for any Covered Loss caused by "flight in . . . an Aircraft. . . except as a passenger in a regularly scheduled commercial airline." Put another way, LINA interprets the Policy to mean that benefits for a Covered Loss caused by flight in, boarding, or alighting from an aircraft are excluded unless the insured was a passenger on a regularly scheduled commercial airline. In this case it is undisputed that Balakrishnan's death was caused by a flight in which he was *not* a passenger on a regularly scheduled commercial airline.

    First, the structure of the "Common Exclusions" provision—a preamble, followed by numbered paragraphs 1-11, which in turn contain indented subparts (such a 6(a) through 6(f)), and further indented sub-subparts (such as 6(b)(i) and 6(b)(ii))—makes clear that the phrase following the number 6 continues the sentence started in the preamble, and each subpart (a) through (f) independently follows the language in the preamble and paragraph 6 to make a complete and independent sentence. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 156 (2012) (discussing the scope of subparts canon). In other words, the indented structure and placement of punctuation (specifically, colons and semi-colons), results in a plain reading of 6(a) as follows:

> In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from flight in, boarding or alighting from an Aircraft or any craft designed to fly above the Earth's surface, except as a passenger on a regularly scheduled commercial airline.

Likewise, a plain reading of 6(b) is:

> In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from flight in, boarding or alighting from an Aircraft or any craft designed to fly above the Earth's surface, being used for crop dusting, spraying or seeding, giving and receiving flying instruction, fire fighting, sky writing, sky diving or hang-gliding, pipeline or power line inspection, aerial photography or exploration, racing, endurance tests, stunt or acrobatic flying; or any operation that requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on).

And so on for 6(c) through 6(f). This reading is consistent with the ordinary meaning of the words in the provisions as well as the "scope of subparts canon" of contract construction, which instructs that "[m]aterial within an indented subpart relates only to that subpart; material contained in unindented text relates to all the following or preceding indented subparts." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 156 (2012) (cited in *Matter of Pirani*, 824 F.3d 483, 495 (5th Cir. 2016)). The structure of the Common Exclusions provision also prevents the ambiguity Plaintiff argues is created by reading subparts (a)-(f) as a whole. See ECF 43 at 10-11. Plaintiff concedes that "if LINA had written Exclusion 6 to end with the language of exception 6(a), . . . [Balakrishnan would be] clearly excluded from coverage." Due to the structure of the Common Exclusion provision, 6(a) relates only to 6(a) and is read independently of 6(b)-6(f). A plain reading of 6(a) clearly excludes benefits for Balakrishnan's death as a passenger on a *private* aircraft.

Another canon of construction, the surplusage canon, requires that if possible, every provision in a contract should be given effect and should not needlessly be given an interpretation that causes it to duplicate another provision or have no consequence. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012). While it is true that a loss excluded by 6(b) through 6(f) also could be excluded by 6(a) as outside its exception for commercial airline passengers, at least one court has held provisions substantially

similar to 6(b) through 6(f) were not rendered meaningless when 6(a) is read independently of 6(b) through 6(f). *See Weber v. Life Ins. Co. of North America*, 836 F. Supp. 2d 427, 435-36 (W.D. Va. 2011) (explaining why provisions after 6(a) are not rendered meaningless by an interpretation like that proposed here). For example, the *Weber* court noted that "an aircraft might . . . be regularly employed by a commercial crop-dusting company such that without the exclusion in [6(b)], an injury or loss sustained by a passenger while flying in . . . that aircraft would be covered." Additionally, it is not inconceivable that in the future, flight in an aircraft "designed for flight above or beyond the earth's atmosphere" could also occur as a regularly scheduled commercial airline flight, making subpart 6(c) meaningful even if Exclusion 6(a) is interpreted to exclude all losses except for those as passengers on a commercial airline. Furthermore, the Fifth Circuit has noted that overlapping or even redundant exclusions do not render a policy exclusion ambiguous. *See Const. State Ins. Co. v. Iso-Tex Inc.*, 61 F.3d 405, 409 (5th Cir. 1995) ("Given the strict rules of construction against a drafter, an insurance provider would be motivated to draft overlapping and redundant clauses which exclude coverage for the same conduct."); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. U.S. Bank, Nat. Ass'n*, No. CIV. A. 4:07-CV-1958, 2008 WL 2405975, at *6 (S.D. Tex. June 11, 2008) ("Even in cases in which more than one exclusion actually applies to bar coverage, overlapping exclusions are permissible.").

Significantly, Plaintiff's proposed interpretation would require the Court to rewrite the Policy by rearranging the words and the relationship of the indented subparts. Plaintiff contends that her interpretation requires "only a slight change in punctuation," but in fact, her interpretation requires changing the structure of the exclusion so that it would read:

> [B]enefits will not be paid for any . . . Covered Loss which . . . results from . . . :
>
> 6. flight in, boarding or alighting from an Aircraft or any craft designed to fly above the Earth's surface, except as a passenger on a regularly scheduled

13

>> commercial airline, being used for:
>
>> > crop dusting, spraying or seeding, giving and receiving flying instruction, fire fighting, sky writing, sky diving or hang-gliding, pipeline or power line inspection, aerial photography or exploration, racing, endurance tests, stunt or acrobatic flying; *or*
>> >
>> > any operation that requires a special permit from the FAA, even if it is granted (this does not apply if the permit is required only because of the territory flown over or landed on);
>> >
>> > designed for flight above or beyond the earth's atmosphere;
>> >
>> > an ultra-light or glider;
>> >
>> > being used for the purpose of parachuting or sky diving;
>> >
>> > being used by any military authority, except an Aircraft used by the Air Mobility Command or its foreign equivalent. . .

*See* ECF 43 at 14. Plaintiff argues that because LINA chose to place exclusions 6(b) – 6(f) below exception 6(a), the exclusions in 6(b) - 6(f) "qualify the global exclusionary introduction of Exclusion 6 by defining **specific** private flight participants **out** of coverage by **types** of craft or flight." *Id.* (emphasis in the original). Plaintiff argues that because ordinary rules of contract construction assume subparts 6(b) - 6(f) to have purpose and meaning,

> Exclusion 6 is reasonably interpreted to **exclude** anyone killed in any aircraft, **except** as a **passenger** on a regularly scheduled commercial airline, . . . **if** the aircraft is engaged in any of the activities of 6(b)-(f).

*Id*. (emphasis in the original). As written, the flight exclusion evidences a specific structure which impacts the relationship of each indented subpart to the other text. Plaintiff's interpretation would require the Court to move subpart (a) from its position as an indented subpart and place it within the text of Paragraph 6, which in turn relates to all the remaining subparts, thus re-writing the provision. The ordinary rules of contract construction require the Court to enforce the Policy as written. *See Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 768 (5th Cir. 1995) (applying

Texas law); *Murfey v. WHC Ventures, LLC*, 236 A.3d 337, 355 (Del. 2020) ("it is axiomatic that courts cannot rewrite contracts or supply omitted provisions"). Thus, Plaintiff's interpretation is not a reasonable interpretation of the flight exclusion as written.

While no party has identified binding precedent addressing the same contract language, LINA has cited two cases which found a similar flight exclusion to be unambiguous and LINA's interpretation to be legally correct: *Weber v. Life Ins. Co. of N.A.*, 836 F. Supp. 2d 427 (W.D. Va. 2011), aff'd, 492 F. App'x 444 (4th Cir. 2012) and *Toohey v. Wyndham Worldwide Corp. Health & Welfare Plan*, 727 F. Supp. 2d 978 (D. Or. 2010). In *Weber* and *Toohey* the flight exclusion at issue was substantially similar to the one at issue here, with the exception that it included an additional subpart listed as subpart 6(b) below:

> 6. flight in, boarding or alighting from an Aircraft or any craft designed to fly above the Earth's surface:
>    a. except as a passenger on a regularly scheduled commercial airline;
>    b. being flown by the Covered Person or in which the Covered Person is a member of the crew;
>    c. being used for: . . .

*Weber*, 836 F. Supp. 2d at 433; *Toohey*, 727 F. Supp. 2d at 984-85. Plaintiff argues that this difference makes the cases inapposite but fails to persuasively describe why they are not instructive. ECF 50 at 7. Ultimately, Plaintiff took the position at the oral hearing that *Weber* is simply wrongly decided. The Court agrees that *Toohey* is too factually distinct to provide much guidance here. However, recognizing that *Weber* is not authoritative, the Court finds it persuasive. The *Weber* court concluded:

> [S]ubparagraphs (b) through (g) stand as additional, independent grounds of exclusion that address plausible factual scenarios not presented in this case. In reviewing the language of Common Exclusion 6, one need not strain in order to reach this conclusion. For example, the exclusion in 6(b) precludes coverage for a pilot, co-pilot, or flight attendant who otherwise might conceivably fall within the 6(a) exception. In other words, it prevents a crew member on a commercial airliner from claiming he was a "passenger" in the broader sense of that term.

15

836 F. Supp. 2d at 435. The fact that *Weber* involved an additional exclusion for aircraft "being flown by the Covered Person or in which the Covered Person is a member of the crew," does not affect its persuasiveness regarding the construction of the flight exclusion in this case, including the persuasiveness of its conclusions regarding the relationship of the indented paragraphs to each other. *See id.* at 436 ("Although they could stand to be improved grammatically, the subparagraphs are each clearly independent grounds for exclusion applicable to distinct, high-risk factual scenarios. Further, each of these exclusions has a plain meaning and precludes coverage for certain activities that might otherwise not be barred by the basic exclusion and its exception contained in 6(a)."). In addition, the *Weber* and *Toohey* cases support a finding that LINA has interpreted the flight exclusion uniformly in at least two prior instances.

Plaintiff relies heavily on *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012) for the proposition that the Court must construe the flight exclusion to have a meaning as close as possible to that expressed in the 2003 SPD. ECF 43 at 15-17. However, *Koehler* does not apply in a case such as this where the flight exclusion is unambiguous. *See* 683 F.3d at 188, 191 (noting that ambiguous plan summaries must be construed in favor of the insured and holding that Aetna "relied on a legally incorrect interpretation of *ambiguous* plan language") (emphasis added). After applying ordinary rules of contract interpretation, the Court finds the flight exclusion unambiguous, and therefore is not required to apply the rule of *contra proferentem*. *Ramirez v. United of Omaha Life Ins. Co.*, 872 F.3d 721, 725 (5th Cir. 2017) ("Only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are [courts] compelled to apply the rule of *contra proferent*[*e*]*m* and construe the terms strictly in favor of the insured.").

The Court concludes that LINA's denial of benefits was based on a legally correct interpretation of the Plan, and therefore it is not necessary to continue to the second part of the abuse of discretion inquiry.

## V. CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the Court RECOMMENDS that Plaintiff's Partial Motion for Summary Judgment (ECF 43) be DENIED, LINA's and Honeywell's Cross-Motions for Summary Judgment (ECF 45, 46) be GRANTED, and a take nothing judgment be entered against Plaintiff on her benefits claim in this case.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on August 11, 2022, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge